UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

R.D. WEIS & COMPANY, INC.,

                  Plaintiff,

      -against-

THE CHILDREN'S PLACE RETAIL STORES, INC.,

                  Defendant.

--------------------------------------------------------------X

Index No.
08 CV 4245 (WCC)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT**

Plaintiff, R.D. WEIS & COMPANY, INC., (hereinafter "RD Weis") submits this Memorandum of Law in support of its opposition to the motion to dismiss the complaint filed by Defendant, The Children's Place Retail Stores, Inc." (hereinafter "TCP").

<u>**PRELIMINARY STATEMENT**</u>

On or about May 5, 2008, Plaintiff (RD Weis) commenced the within action to seek monetary damages from Defendant (TCP) under theories of breach of contract, and/or breach of quasi-contract, unjust enrichment, and *quantum meruit*. RD Weis's claims are based on nonpayment for goods and services sold, and delivered by Plaintiff to Defendant between November 2007, and March, 2008, and goods and services ordered and paid for by Plaintiff in reliance on the parties' mutual agreement to the purchase and sale.

By the current motion, the Defendant seeks dismissal of the complaint for failure

to state a claim for relief pursuant to 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure, and for failure to name an indispensable party pursuant to 19(a) of the Federal Rules of Civil Procedure (hereinafter FRCP). The Federal Rules place a heavy burden on movants seeking dismissal at the pleading stage, and a motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Plaintiff's factual allegations are sufficient to lay out Plaintiff's claims, provide notice of such claims and grounds to Defendant, and articulate entitlement to relief through cognizable legal theories under FRCP 12(b)(6) and controlling law.

Further, and as conceded by TCP, RD Weis did not and could not have brought suit against Hoop Retail Stores, LLC ("hereinafter "Hoop"") as it was not the party with which it entered into the subject sales agreement; R.D. Weis entered into a contract to sell and install carpet with TCP, not Hoop. Accordingly, Defendant's motion to dismiss under FRCP 12(b)(6), and FRCP 19(a)which relies on unsworn, and conclusory allegations must be denied for its failure to meet its burden under the Federal Rules and controlling law.

**Defendant's Motion to Dismiss for Failure to State a Claim for Relief Must Be Denied Pursuant to FRCP 8(a), 8(e) and 12(b)(6)(7)**

It is well settled that FRCP 8(a), requires only a short and plain statement of the grounds upon which the court's jurisdiction depends, a short and plain statement of the claims showing that Plaintiff is entitled to relief, and a demand of judgment for the relief

sought in order to "give the Defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, --- U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In deciding whether a complaint states a claim, a "court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the Plaintiff's favor." Phelps v. N.Kapnolas, 308 F.3d 180 (USCA 2002) citing Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.1994), Dioguardi v. Durning, 139 F.2d 774 (2d Cir. 1944). It is also well settled that "[t]he court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint is legally sufficient." Bellen v. Weiser 2007 WL 2978827 (S.D.N.Y.) citing Festa v. Local 3 Int'l Bhd. Of Elec. Workers, 905 F2d 35, 37 (2d Cir.1990), see also Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985).

The District Court must generally accept the factual allegations of the pleadings as true and draw all reasonable inferences in favor of the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Gregory v. Daly, 243 F.3d 687, 691 (2d Cir.2001), and construe the complaint liberally. Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir.2000). As such, a motion to dismiss under Rule 12(b)(6) must be denied unless "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley at 45-46.

In determining the adequacy of a claim under Rule 12(b)(6), the District Court's consideration is generally "limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945

F.2d 40, 44 (2d Cir.1991); see also Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir.2000). The court may also consider documents that the pleader either possessed or knew about and that are integral to the complaint. Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991). Consideration of such documents is permissible because the pleading party has actual notice of the documents and relied upon them in bringing suit, even if they are not explicitly referenced. Id. The complaint is deemed to include any written instrument attached to it as an exhibit, or any statements or documents incorporated in it by reference. Int'l Audiotext Network, Inc. v. American Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). To survive the motion, Plaintiff must show a cognizable claim and allege facts that, if true, would support such a claim. Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997).

Here, Defendant's motion papers claim (without the support of affidavits or sworn statements) that Plaintiff's complaint fails to state a claim because it fails to allege the existence of a valid contract between TCP and Plaintiff, or to identify a single writing signed by TCP. Further, Defendant suggests that Plaintiff relies on bald allegations, and fails to address the written contract with Hoop (which Defendant concedes was never signed by Hoop), and related invoices in its complaint (Exhibits A, and D to the Motion) in an attempt to avoid collection from a bankrupt company. Defendant is both factually incorrect in its propositions, evidenced by even a cursory review of the Complaint, and premature in its request for relief as it asks the Court to weigh the potential evidence to be submitted at trial, contrary to its function under a 12(b)(6) motion.

**Plaintiff has sufficiently plead breach of contract in the Complaint.**

Under New York law, the elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages. First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir.1998); see also Roberts v. Karimi, 251 F.3d 404, 407 (2d Cir.2001) (stating that "a Plaintiff in a breach of contract case must prove ... that an enforceable contract existed"). Although it is not necessary for each element to be pleaded individually, a claim that fails "to allege facts sufficient to show that an enforceable contract existed" between the parties is subject to dismissal. Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A., No. 03 Civ. 1537, 2003 WL 23018888, at *4, 4-5 (S.D.N.Y. Dec. 22, 2003) (dismissing a breach of contract claim where insufficient facts were alleged to show an oral agreement existed and letter of intent contemplated a final agreement in writing). Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract. See Posner v. Minnesota Mining & Mfg. Co., 713 F.Supp. 562, 563- 64 (E.D.N.Y. May 19, 1989) (where Plaintiffs failed to set forth any specific information as to when the agreement was made, the terms of the agreement upon which liability is predicated, or any other evidence supporting the formation of an agreement, the breach of contract claim was dismissed).

First, contrary to Defendant's contention, the Complaint specifically identifies the parties, (See Complaint ¶¶ 4, 5), specifically alleges the formation of a contractual relationship between Plaintiff and Defendant, when and how it was made, and the terms upon which it was predicated, included payment terms, inclusive of an address for

Plaintiff's invoices, factinvoices@childrensplace.com. (See Complaint ¶¶6-9, and 13-18).

The Complaint states that the agreement was formed through emails, telephone conversations, and other written correspondence exchanged between Defendant and Plaintiff) (Copies of pertinent emails are annexed as Exhibit A, to Affidavit of Randall D. Weis)[1]. (The Court can and should consider documents attached to Plaintiff's opposition papers just as it may consider Defendant's exhibits, as they are "incorporated in the complaint, and are not "matters outside the pleading. FRCP 12(b), Bellen *1, FN1 quoting Cortec, at 47.).

Additionally, the Complaint specifically names an individual at Defendant TCP, Andi Prifiani, Manager, Strategic Planning, The Children's Place, as the person who authorized the sales order to be placed on November 13, 2007. (Weis Aff. Exhibit A,- November 13, 2007 email transmission from apritani@childrensplace.com to rdweis@rdweis.com.[2]), and solidified the agreement after multiple written and verbal communications were exchanged. The Complaint contains specific allegations about its written reminders to TCP of the terms and conditions of the sales agreement (Aff. Weis, Exhibit A, December 19, 2007 email between Randall Weis and Andi Prifiani), dates of performance under the contract, the consideration paid by Plaintiff to vendors, its expected compensation, and the nonpayment, or breach by Defendant. (See Complaint ¶¶ 13-18). Based on the foregoing, and under Conley, Bellen, and First Investors Corp., Plaintiff provided the requisite factual allegations to support the grounds upon which its

---

[1] Annexed emails contain both typed and electronic signatures between the parties, held sufficient for contract formation and to satisfy the Statute of Frauds, (discussed below) such that Defendant's claimed absence of a single writing by TCP is without merit
[2] While the November 13, 2007 email does refer to the contract, Mr. Prifiani of TCP directed Plaintiff to "proceed with the order" notwithstanding the fact that no one had signed it at that time. And in fact, neither TCP nor Hoop ever signs it, as conceded by TCP in its moving papers, and shown in its Exhibit A.

claims are predicated, and Defendant's motion must be dismissed. (Defendant's reliance on Reddington v. Staten Island Univ. Hosp., 511 F.3d 126 (2d Cir. 2007) is misplaced as it involved Plaintiff's failure to overcome the employee-at-will presumption in New York to show the existence of an employment contract in offering mere statements and an expectation of employment in support.) Defendant's attacks on the existence of an enforceable contract itself, and supposition that the unsigned, and presumably abandoned formal written contract between Hoop and RD Weis (the order, performance and acceptance of goods by TCP all occurred unexecuted contract notwithstanding), are premature, and best preserved for summary judgment after discovery.

**Plaintiff has sufficiently plead its quasi-contract and *quantum meruit* claims.**

Alternatively, and as permitted under FRCP 8(a) (e), the Complaint also alleges Plaintiff's causes of action under the theory of quasi-contract/*quantum meruit*. (See Complaint ¶¶ 19-52). Here, too, Defendant challenges the sufficiency of the pleadings, but must also be denied such relief under FRCP 12(b)(6), and applicable case law.

A cause of action for quasi-contract and *quantum meruit* may be pleaded together with a cause of action in contract in the same lawsuit, it being well established that a claim in equity to recover the reasonable value of services rendered under a theory of unjust enrichment may be pleaded in the alternative to a contract claim and may be employed as an alternative basis for recovery should the contract sued upon be held void or unenforceable. Seymore v. Reader's Digest Ass'n, Inc., 493 F. Supp. 257 (S.D.N.Y. 1980); Fashionwear Ltd. v. Regatta, LLC, 2004 WL 2210258 (S.D.N.Y.); Mirchel v.

RMJ Securities Corp., 205 A.D.2d 388, 390 (1st Dep't 1994). Alternative theories of pleading for breach of contract and quasi-contract are particularly appropriate when there is a bona fide dispute as to the existence of an express contract[3] or where the contract does not cover dispute in issue. Fashionwear *4; Curtis Properties Corporation v The Greif Companies, 236 A.D.2d 237 (1st Dep't 1997). Under the doctrine of *Quantum Meruit*, when one party agrees to accept the services of another [party who expected compensation], an implied contract to pay the reasonable value of such services is formed. Fashionwear, at *3; GSGSB, Inc. v. New York Yankees, 862 F.Supp. 1160, 1170 (S.D.N.Y. 1994).

Defendant states the standard for recovery under a theory of *quantum meruit* under Longo v. Shore & Reich, Ltd., 25 F.3d 94, 98 (2d Cir. 1994), and Starkey v. Estate of Nicolaysen, 796 A.2d 238, 242-43 (N.J. 2002), not the standard to survive a motion to dismiss as claimed[4]. (Motion, Page 5). In order to recover, Plaintiff must establish (1) performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefore, and (4) the reasonable value of the services. Again, a review of the Complaint, and the documents now incorporated by reference, including the Invoices provided by Defendant (Exhibit D), and the emails included with Plaintiff's Opposition (Aff. Weis, Exhibit A), will result in ample proof that a claim of quasi-contract, implied contract and *quantum meruit* has been sufficiently plead (if not proven), under the FRCP and the law.

---

[3] Defendant improperly offers the Hoop contract as an obstacle to Plaintiff's quasi or implied contract claim when it is admittedly unsigned and therefore unenforceable, or at the very least, the subject of a bona fide dispute.

[4] In fact, the cases offered as support for Defendant's attack on Plaintiff's quasi-contractual claim, actually provide compelling authority for the merits of Plaintiff's claim as each court found Plaintiff entitled to recovery under *quantum meruit* in the absence of a fully executed express contract in Longo (only Plaintiff had signed the contract) or a timely written contingent fee agreement in Starkey.

The Complaint includes facts that allege Plaintiff's performance of services in good faith (See Complaint ¶¶ 9-11, 16, 30-33, 46-47), that such services were accepted by the person to whom they are rendered (See Complaint ¶¶ 10, 17-18, 22, 38, 40-49), that an expectation of compensation existed (See Complaint ¶¶ 6, 9-10, 13-18, 21-26, 29-31, 33-36, 38-44, 49-52, and that provide the reasonable value of the services. (See Complaint ¶¶ 6, 9-10, 13-18, 21-26, 29-31, 33-36, 38-44, 49-52). Additionally, the invoices, Exhibit D to the Motion, serve to support Plaintiff's claim that Defendant TCP received the benefit of the services as it is TCP, and related store locations listed as the shipping locations for the goods sold and/or installed; .

Moreover, the invoices, and related emails expressly provide the reasonable value of the services provided to and accepted by TCP and serve as indisputable proof of Plaintiff's expectation of compensation. Emails exchanged between Joe Pedalino, of Milliken Modular, the carpet manufacturer Andi Priftani of TCP, and Randall Weis (Plaintiff) address price, installation, dates, schedule, and payment (i.e. November 7, 2007 email from apriftani@childrensplace.com to rdweis@rdweis.com, with cc's to additional RD Weis and TCP personnel, and Subject of "Disney Carpet Installation Spreadsheet" and "Randy, Please look @ the attached file below and provide your competitive installation cost per each location as soon as possible. Please let me know of you have any questions. Thanks, Andi" – Aff. Weis, Exhibit A). Of particular significance is a November 7, 2007 email sent from Andi Priftani to Randall Weis that included The Children's Place Supplier Qualification Request for Information, Financial Survey, Mutual Non-Disclosure Agreement, and No Relationship Letter, all which reflected The Children's Place name or logo and language including "*Welcome to doing*"

business with *The Children's Place. Together we can meet the challenges of a very competitive world."* The documents sought information expressly for TCP, not Hoop. (Aff. Weis, Exhibit B).

Subsequent emails between Plaintiff and Defendant solidify pricing, volume, scheduling, and execution details, and culminate in TCP's November 13, 2007 email directive to place the initial order, and TCP's December 4, 2007 email directive to add two more stores and "place the second order (2008) as soon as possible." (Aff. Weis, Exhibit A). And finally, emails exchanged on December 19, 2007, March 11, 2008, March 14, 2008 March 20, 2008, March 25, 2008, and March 26, 2008 between Plaintiff and Defendant specifically address the shipment of goods, the forwarding of invoices, expected payment dates under the terms discussed, financial outlay by Plaintiff for the goods, requests for payment by Plaintiff, and acknowledgment of its obligation to make payment by Defendant. (Aff. Weis, Exhibit A).

Based on the foregoing, it is clear that Plaintiff has alleged sufficient facts, cognizable legal theories, damages, and entitlement to relief to require the denial of Defendant's 12(b)(6) motion as matter of law. While Plaintiff maintains that it has met its burden of demonstrating its entitlement to pursue its action, and the Court's inquiry can and should end here, Defendant's remaining arguments will be addressed.

**Plaintiff can satisfy requirements under §2-201(1) of the UCC and should be permitted to do so at trial.**

N.Y. UCC § 2-201 states that the sale of goods in excess of $500.00 requires a writing in order to be enforceable that is "signed by the person against whom enforcement is sought or by his or her authorized agent or broker. *West's McKinney*

*Forms, Uniform Commercial Code, Article 2,* (2008). Under the NY UCC (and related N.J. Stat.§ 12A:2-201), any writing sufficient to indicate that a contract for sale has been made between the parties will be treated as a contract for sale, and emails have been repeatedly held to qualify as such writings, particularly when they include essential terms. The UCC does not require that the contract itself be in writing, only that there be adequate documentary evidence of its existence and essential terms. A typed signature at the bottom of an email satisfies the signature requirement of the statute of frauds as the vendor's act of typing his or her name manifested his or her intent to authenticate the transmission, and a copy of the email demonstrated that intent. Bazak Intern. Corp. v. Tarrant Apparel Group, 378 F.Supp.2d 377 (S.D.N.Y. 2005) (where email between merchandiser and seller stated "in confirmation" of earlier agreement, and typed signature appeared at bottom of letter satisfied statute of frauds); Stevens v. Publicis, S.A. 50 A.D.3d 253 (1st Dep't 2008) (the emails from Plaintiff constitute signed writings within the statute of fraud since Plaintiff's name a the end of his email signified his intent to authenticate the contents.); Rosenfeld v. Zerneck, 4 Misc.3d 193, 776 N.Y.S.2d 458 (Sup. 2004); (Al-Bawaba.com Inc. v. Nstein Technologies, Corp., 2008 WL 1869751 (N.Y. Sup.) where an email with a typed signature at the bottom of the email qualified the email as a signed writing). [5] Also persuasive is the 7th Circuit's holding in Cloud Corp. v. Hasbro, Inc., 314 F.3d 289 (7th Cir. 2002), which expressly addressed the issue of emails

---

[5] Though the Court of Appeals has yet to rule specifically on email signatures, its holding in Parma Tile Mosaic & Marble Co., Inc. v. Estate of Short, 87 N.Y.2d 524, 640 N.Y.S. 477 (1996) is compelling as it rejected the automatic imprinting of a sender's name on an outgoing fax as a subscription under the Statute of Frauds because the "intentional act of programming a fax machine" did not demonstrate "intent to authenticate the particular writing at issue." In contrast here, there are multiple emails from Defendant that contain typed names/signatures with references to the agreement and its terms.

and the UCC Statute of Frauds, and held that the sender's name on an email satisfies the signature requirement of the statute of frauds.

Here, contrary to Defendant's argument, there is ample evidence of writings between and among the parties which reference the sales agreement, address essential terms including quantity and price in the forms of the emails discussed above and attached to Weis Affirmation, the invoices provided by Defendant, and the supplier documents sent from Andi Prifiani to Randall Weis as an email attachment (Aff. Weis, Exhibit B). Many if not all of the emails sent from TCP reflected a typed name/signature (i.e. "Andi""), or an electronic signature with title and contact information, clearly authenticating the identification of the party charged here, namely TCP. Further, TCP's email acknowledgements of the outstanding invoices and payment terms serve to support the existence of the sale of goods and services, consistent with the purposes of the statute of frauds. Plaintiff has demonstrated its entitlement to proceed, and Defendant's argument must be rejected as a matter of law.

Further, the statute of frauds (under both New York and New Jersey) contains two exceptions to the writing requirement, both of which are properly asserted here. First, under N.Y. U.C.C. §2-201(3)(a) and N.J. Stat. §12A:2-201(3)(a), there is an exception to the writing requirement for specially made goods that are specially manufactured for the buyer, Standard Builders Supplies v. Gush, 206 A.D.2d 720 (3rd Dep't 1994), and are not suitable for sale in the ordinary course of seller's business, and the seller has made substantial progress in beginning to manufacture or procure the goods. Here, the goods at issue are a custom broadloom carpet made specifically for Defendant with design work that received approval prior to production. (October 31, 2007 email from Milliken to

Andi Prifiani at TCP), and routinely referred to as "Disney Pink and Green" in correspondence, spreadsheets, invoices and purchase orders. (See all Exhibits). The goods were manufactured based on the orders placed by TCP with Plaintiff in November and December 2007, there was no repudiation of those orders, and Plaintiff paid in full for the custom carpet, and completed installation in the first nine stores by the end of January 2008.

Secondly, the UCC carves out another exception for goods that have been received and accepted. N.Y. U.C.C. §2-201(3)(c) and N.J. Stat. §12A:2-201(3)(c) Receipt and acceptance of goods constitutes an unambiguous overt admission by both parties that a contract actually exists, and recovery is permitted without a writing  Winston American Transporation, Inc. v. Motorola Communications and Electronics, 229 A.D.2d 1033 (4th Dep't 1996).  It is undisputed that Plaintiff performed as contemplated under the parties' agreement by it's purchase of the custom carpet, shipment and delivery of all goods to warehouses, and installation in nine stores.  Defendant entered into an agreement with Plaintiff for customized goods, which it approved and authorized, and accepted the goods (performance) for installation in nine stores, and for the anticipated installation in the other stores to be scheduled.  Therefore, both of the statute of frauds exceptions are triggered here, and Defendant's argument must again be rejected.

**Defendant's Claim that Complaint Must be Dismissed for Failure to Include Hoop as a Party under FRCP 19(a) is Legally Incorrect and Must be Denied.**

Defendant claims that the failure to name Hoop the "Debtor" in the within action is fatal to Plaintiff's claim.  As evidence of this supposition, Defendant offers the

unsigned Hoop contract, and the appearance of Hoop's name on the invoices exchanged between Plaintiff and Defendant, and the unsupported premise that "only Hoop accepted performance by Plaintiff." Defendant incorrectly states this "contract" unsigned by Hoop or TCP is that which Plaintiff seeks to enforce, and argues that TCP will be prejudiced by Hoop's absence and the difficulty of discovery due to the stay imposed by the Bankruptcy Code (the latter point directly contradicted by Defendant's possession of the documents in its Exhibits to the Motion, and that Hoop was a wholly owned subsidiary of TCP – the Motion, page 3). The factual inaccuracies of Defendant's argument and application of controlling law require that this arm of the Motion be denied.

First, under New York law, and as discussed above, the unsigned contract with Hoop is unenforceable such that Defendant's multi-party contract theory and specific contract provision references are without value. Defendant concedes that the contract is unsigned yet repeatedly offers it as proof of a contract between Plaintiff and Hoop when the overwhelming evidence proves that the contract, implied or otherwise was between Defendant TCP and Plaintiff. Authority cited by Defendant is misplaced in that both cases address the indispensability of a contracting party to an action if it was deemed necessary to outline Plaintiff's claim or afford complete relief, which is not the case or the claim here. Plaintiff maintains that its agreement was with Defendant TCP, throughout the offer, acceptance, consideration, performance, and damages stages, and seeks to recover said damages from Defendant; there is no claim that Defendant, Plaintiff, and Hoop are parties to the same contract. Further, as Defendant correctly points out, Hoop is currently protected by an automatic stay through its bankruptcy proceeding and cannot be immediately joined.

In General Electric Capital Corp. v. PRO-FAC Cooperative, Inc., 2002 WL 1300054 (S.D.N.Y.) Plaintiff leased equipment to Debtor, and sues debtor's parent and affiliate ("Parent") after debtor's chapter 11 filing, alleging Parent is an alter-ego and Parent agreed to be obligated for contract debt.  The Parent removed case to District Court with the intent of removing to Bankruptcy Court on grounds, inter alia, that Debtor is an "indispensable party".  The Court held Debtor is NOT an indispensable party because "liability [of Parent] is premised on alleged actions of [the Parent] rather than of the Debtor. Even if [Parent] were viewed as co-obligors on the lease, joinder would not be required under Rule 19 ", and the case was remanded back to state court.

In Aetna Casualty and Surety Co. v. Namrod Development Corp., 140 B.R. 56 (SDNY 1992), where Defendants, individual guarantors, alleged they could not conduct their defense or assert counterclaims without corporate Debtor's joinder, the court found the Debtor is NOT an indispensable party because the Defendants did not need the Debtor to conduct their defense.  Defendants were controlling shareholders and officers of corporate Debtor, Defendants were in full knowledge of the events leading to the litigation, and the evidence concerning the underlying facts was "undoubtedly" in their possession.  As such, the corporate Debtor was not an indispensable party. (Citing National Union Fire v. Mason, Perrin, & Kanovsky, 709 F.Supp. 411, 414 (S.D.N.Y. 1989) (holding that if present Defendants will raise all arguments that absent parties would raise, absent parties' interests are adequately represented) 140 BR at 61.  See also Holland v. Fahnestock & Co., Inc., 210 F.R.D. 487 (SDNY 2002) (where Defendant alleged Pullman was indispensable party as Pullman was held to be a co-obligor, jointly

and severally liable on an Engagement Letter, and the court held that co-obligors are not indispensable parties.).

As in <u>General Electric</u>, Plaintiff's claims of liability here are premised on the actions of the parent, Defendant TCP (See Complaint, and Aff. Weis), as opposed to any actions of Hoop, the wholly owned subsidiary and Debtor here. Further, Defendant here, like Defendant in <u>Aetna</u>, does not need the Debtor to conduct its defense as it owned Hoop, had full knowledge of the events leading to the litigation, and evidence relevant to the underlying facts is concededly in their possession. Even if there was some basis for finding that Defendant and TCP were co-obligors, joinder of Hoop is not required under <u>General Electric</u> and <u>Holland.</u>  And like <u>Holland,</u> Defendant's ability to defend its interests will not be impaired by the absence of Hoop, and thus, this contention must be rejected.  As shown, Defendant has not met its burden under FRCP 19(a) as asserted, such that there is no need nor requirement for this Court to find the debtor, Hoop an indispensable party to the action.  Controlling case law permits no other result.

**CONCLUSION**

Based on the foregoing, Plaintiff respectfully submits that Defendant has not met it burden of demonstrating entitlement to relief on any of grounds on which it is sought. Consequently, Plaintiff requests that Defendant's motion be denied in its entirety, or in the alternative, should the Court grant any of Defendant's applications, that Plaintiff be granted leave to amend its Complaint pursuant to FRCP 15, and any additional relief deems just by the Court.

Dated: August 6, 2008

Respectfully submitted,

ELEFANTE & PERSANIS, LLP

Barbara Curtis (BC0689)

670 White Plains Road, Suite 321

Scarsdale, New York 10583

(914) 725-4000

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

R.D. WEIS & COMPANY, INC.,

                              Plaintiff,

          -against-

THE CHILDREN'S PLACE RETAIL STORES, INC.,

                              Defendant.

---------------------------------------------------------X

Index No.
08 CV 4245 (WCC)

STATE OF NEW YORK      )
                           ) ss.:
COUNTY OF WESTCHESTER  )

Randall Weis, being duly sworn, deposes and says:

1.    I am the President of RD Weis & Companies ("RD Weis"), a New York corporation with an address at 200 William Street, Port Chester, New York 10573. RD Weis assists retail, franchise and corporate companies in maintaining their multi-location facilities, including the installation and maintenance of carpet. As the president of the corporate party plaintiff, and participant in the agreement for the sale of goods between the above parties, I am fully familiar with all documents, emails, invoices, orders and additional materials relevant to the action.

2.    This Affirmation is being submitted in support of RD Weis' Opposition to Defendant's Motion to Dismiss, and in furtherance of its claim in the total amount of $643,648.74 consisting of (i) $616,462.95 for goods and services delivered and installed, goods ordered and stored in reliance of placed orders; (ii) $25,000 for warehouse storage fees at the rate of $5,000 per month for the period March 1, 2008 through July 31, 2008,

which will continue to accrue at the rate of $5,000 per month; and (iii) freight charges in the amount of $2,185.79.

## BACKGROUND

3.      On or about November 13, 2007, RD Weis entered into an agreement with The Children's Place Retail Stores, Inc. ("TCP"), whereby RD Weis agreed to order, store, deliver and install carpet specifically Pink & Green Refresh Disney Carpet (a.k.a. Milliken Floor Covering Pixie Dust) in approximately 45 of the Disney Stores.  The agreement was memorialized through verbal communications and the exchange of written and electronic correspondence and documents.  Copies of pertinent electronic mail correspondence are annexed hereto as Exhibit A.

4.      Between December 2007 and March 2008, RD Weis, relying upon the agreement, ordered and purchased carpet for all 45 stores.  RD Weis installed carpet in 9 stores before it was advised to cease installation.

5.      Between February 2008 and March 2008, RD Weis sent corresponding invoices to TCP by mail and by email to factinvoices@childrensplace.com , as instructed by TCP.

6.      RD Weis timely delivered separate invoices for each specific store with respect to the carpet purchase and/or carpet installation.  Copies of the invoices are annexed as Exhibit B.

7.      To date, despite repeated requests for payments, and assurances by TCP that such payments would be made in a timely manner, no payments have been made.

8.      All correspondence, written, electronic, and telephonic, as well as the all essential terms of the agreement, including but not limited to order size and

specifications, installation locations, number of store locations, schedule of installations, pricing, carpet type and changes before, during and after the agreement was formed, were between RD Weis and TCP.

9.    On account of the above, and as a direct result of TCP's breach of its agreement, and its failure to pay for goods and services provided, RD Weis is entitled to a an amount of no less than $616,462.95, plus related fees and costs.

10.    On or about May 5, 2008, RD Weis filed a complaint against TCP in the United States District Court, Southern District of New York, Index No. 08 CIV 4245 seeking payment due on the contract including, (i) $616,462.95 for goods and services delivered and installed, goods ordered and stored in reliance of placed orders; (ii) storage fees at the rate of $5,000 per month from March 1, 2008; and (iii) incidental costs, interest, attorneys' fees.

11.    In addition to the foregoing, since March 1, 2008, storage fees have accrued at the rate of $5,000 per month, for a current total in the amount of $25,000.

12.    In addition to the foregoing, freight fees for transferring the carpet from the manufacturer to storage has been incurred in the amount of $2,185.79.

Dated : July 31, 2008

_____
RANDALL WEIS

Sworn to before me this
31 day of July 2008

_____
Notary Public

MARJORIE CAMPBELL
Notary Public, State of New York
No. 01CA6036065
Qualified in Westchester County
Commission Expires January 18, 20 10

EXHIBIT A