UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

R.D. WEIS & COMPANY, INC., : Index No.
: **08 CV 4245 (WCC)**
Plaintiff, : ECF Case
:
v. :
:
:
THE CHILDREN'S PLACE RETAIL :
STORES, INC., :
:
:
Defendant. :

---

### DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF THE MOTION OF THE CHILDREN'S PLACE RETAIL STORES, INC., A DELAWARE CORPORATION TO DISMISS THE COMPLAINT OF R.D. WEIS & COMPANY, INC.

The Children's Place Retail Stores, Inc., a Delaware corporation ("TCP") submits this Reply Memorandum in support of its Motion to Dismiss the Complaint (the "Motion")[1] of the above-captioned Plaintiff, R.D. Weis & Company, Inc. ("R.D. Weis") and in response to the *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint* [Docket No. 11] ("Opposition Memorandum"). Concurrent with the filing of this Reply Memorandum, TCP files the *Declaration of Deana Spak in support of Defendant's Reply Memorandum in Support of the Motion of The Children's Place Retail Stores, Inc., a Delaware Corporation to Dismiss the Complaint of R.D. Weis & Company, Inc.* (the "Spak Declaration").

### PRELIMINARY STATEMENT

Despite Plaintiff's attempt to create a claim out of whole cloth in response to Defendant's Motion to Dismiss, its Complaint boils down to one simple fact – there is a valid, enforceable contract that establishes, as a matter of law, that the Complaint fails to state a claim

against TCP. Regardless of Plaintiff's dissatisfaction with the fact that Hoop filed for bankruptcy protection, it cannot ignore the existence of the valid contract between itself and Hoop (the "Contract"). The Contract, **signed by Plaintiff**, clearly provides on its face that (1) the goods and services provided by Plaintiff to The Disney Stores are governed by the Contract and (2) Plaintiff and Hoop, not TCP, are the parties to the Contract. Further, the Contract makes any discussions, communications, or agreements that occurred prior or subsequent to execution of the Contract irrelevant. As such, Plaintiff is barred from using evidence outside of the Contract in an attempt to plead an alternative agreement between itself and TCP. Thus, as a matter of law, Plaintiff has not alleged and cannot establish facts that would entitle it to the relief it seeks from TCP.

Moreover, despite Plaintiff's unsupported and conclusory statements, TCP did not negotiate, communicate with, or enter into an agreement with Plaintiff with respect to the claims that are the subject of the Complaint. Contrary to the allegations made in the Complaint and Opposition Memorandum, Andi Priftani and every other person Plaintiff alleges it dealt with from TCP, were not TCP employees or representatives, but rather employees of TCP Services, a separate and distinct entity that was acting on behalf of Hoop. As discussed below, Plaintiff was well aware that the people it was dealing with were acting on behalf of Hoop. Moreover, Plaintiff's own affirmation and documents submitted in support of its opposition to the Motion establish that it knew it was providing goods and services to Hoop, not TCP. Indeed, the invoices provided by Plaintiff identify "Hoop Retail Stores" as the party to whom the goods were sold and identifies the Customer I.D. as "Hoop Retail PRJ."

Alternatively, even if this Court finds that dismissal of the Complaint pursuant to Rule 12(b)(6) is not appropriate, the Complaint must still be dismissed pursuant to Rule 19.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

2

As the party with whom Plaintiff executed the Contract, Hoop is clearly a necessary and indispensable party to this Action. Failing to name Hoop would be prejudicial to TCP's ability to adequately defend this Action. Further, contrary to its assertion, Plaintiff can file a claim against Hoop or seek relief from the automatic stay to bring an action against Hoop. Regardless of how Plaintiff ultimately seeks to recover from Hoop, it is still Hoop, not TCP, that is potentially liable to Plaintiff. Because of this, no adequate judgment can be rendered in Hoop's absence.

## ARGUMENT

**A.     The Complaint Must be Dismissed for Failure to State a Claim**

Plaintiff, by its own admission, is not seeking to enforce the Contract but rather is alleging the existence of an "agreement" between itself and TCP. *See* <u>Opposition Memorandum</u>.[2] By alleging the existence of an alternate agreement, Plaintiff is impermissibly attempting to circumvent the automatic stay of Hoop's bankruptcy proceedings and avoid the ramifications of providing goods and services to a now bankrupt entity. The attempt must fail because the Contract is valid and enforceable, and Hoop, not TCP, is liable for the goods and services provided to the Disney Stores (the "<u>Goods and Services</u>") under the Contract.

In its attempt to allege the existence of an alternate agreement, Plaintiff misses one crucial point. The e-mail traffic between Plaintiff and Andi Priftani, acting in his role as an agent of Hoop, not only supports but <u>requires</u> the conclusion that the Contract is the sole document that governs this dispute. Priftani, as Hoop's agent, sent Plaintiff a copy of the Contract for execution. <u>See</u> E-mail from Andi Priftani to Randall Weis dated November 8, 2007, 07:13 p.m. EST (the "<u>Contract E-mail</u>"), attached to the Affirmation in support of the Opposition Memorandum and as <u>Exhibit A</u> hereto. Shortly thereafter, Priftani provided Hoop's assent to the

3

Contract when he directed Plaintiff, "in accordance with the *terms and conditions of the contract*, please proceed with the order." See E-mail from Andi Priftani to Randall Weis dated November 13, 2007, 1:09 p.m. EST (the "Authorization E-mail"), attached to the Affirmation in support of the Opposition Memorandum (and as Exhibit B hereto). Two days later, Plaintiff signed the Contract and then proceeded to carry out the order for the benefit of Hoop as authorized.

Plaintiff and Priftani continued to communicate through e-mails regarding Plaintiff's performance under the Contract. Because the Complaint fails to allege any facts in support of the conclusory statement that Plaintiff entered into an agreement with TCP it must be dismissed under Rule 12(b)(6). See First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771-72 (2d Cir. 1994) (stating that unwarranted deductions of fact are not admitted for purposes of deciding a Rule 12(b)(6) motion). Indeed, The exhibits attached to the Affirmation in Support of the Opposition Memorandum directly contradict Plaintiff's allegation that the Authorization E-mail solidified an agreement between Plaintiff and TCP. As set forth above, the Authorization E-mail and the Contract E-mail unequivocally establish that Priftani was acting on behalf of Hoop and that the agreement that was solidified was the Contract between Hoop and Plaintiff.

Plaintiff's assertion of an alternate agreement between itself and TCP on the basis of the e-mails between itself and Priftani is simply an attempt to circumvent the Merger Clause[3]

---

[2] Because Plaintiff failed to insert page numbers in the Opposition Memorandum, TCP is unable to properly cite the referenced portion, however, TCP believes the admission is contained on pages 13-14.

[3] The Merger Clause provides: "The Agreement and all Exhibits, and any subsequent modifications or amendments executed by authorized representatives of each party **set forth the entire understanding between the parties hereto and supersede all prior agreements, arrangements and communications, whether oral or written, with respect to the subject hereof**. No other agreements, representations, warranties or other matters, whether oral or written, shall be deemed to bind the parties hereto with respect to the subject matter hereof. **The parties acknowledge that they are entering into this Agreement solely on the basis of the agreements and representations contained herein**, and for each party's respective purposes and not for the benefit of any third party. This Agreement may not be modified or amended except by the mutual written agreement of the parties signed by respective duly authorized representatives of each party. These terms and conditions shall be binding on the Supplier and its subsidiary and affiliated companies. **Acceptance is expressly limited to the terms herein (regardless of whether or when Supplier may have submitted or may submit its own terms or other**

contained in the Contract. No separate or quasi-contract exists between TCP and Plaintiff. The e-mails Plaintiff attached to the Opposition Memorandum simply evidence the negotiations which resulted in the Contract between Hoop and Plaintiff, Hoop and Plaintiff's communications in carrying out the Contract, and Plaintiff's later attempts to collect payment for the Goods and Services. Furthermore, pursuant to the Merger Clause, none of the emails can be considered to embody the terms and conditions of the Contract or any other purported agreement among the parties.

The Complaint does not allege that the Contract is ambiguous or the product of mutual mistake, only that it is unsigned by Hoop. Accordingly, this Court should not consider parole evidence to modify or contradict the terms of the Contract, an integrated agreement. See Kleinberg v. Radian Group, Inc., 2002 U.S. Dist. LEXIS 20595 (S.D.N.Y. Oct. 29, 2002) ("Absent a showing of ambiguity or mutual mistake -- neither of which is alleged here -- it is well-settled that where contracting parties have "reduced their agreement to an integrated writing, the parol evidence rule operates to exclude evidence of all prior or contemporaneous negotiations or agreements offered to contradict or modify the terms of their writing."); Madison Industries, Inc. v. Eastman Kodak Co., 243 N.J. Super. 578, 587-588 (App. Div. 1990) (court properly rejected the use of parol evidence because "court[s] may exclude parol evidence as to the meaning of a term if it finds that the parties intended the writing to be a complete and exclusive statement of the terms of the agreement."); see also Gould v. Lightstone Value Plus Real Estate Inv. Trust, 486 F. Supp. 2d 325, 329 (S.D.N.Y. 2007) ("Extrinsic information, such

---

documentation) and any additional terms or modifications submitted by Supplier shall be void unless specifically agreed to beforehand and in writing [with] [sic] Hoop. In the event of a conflict between this Agreement and the terms set forth in a Supplier invoice, the terms of this Agreement shall prevail." Contract, ¶ 28.

5

as Lichtenstein's alleged statements assuring Gould that he would be paid, should be examined only when the language of the contract is ambiguous.").

Simply stated, the Merger Clause makes all other discussions and agreements related to the Plaintiff's supply and installation of carpet in the Disney Stores irrelevant. Plaintiff is bound by the terms of the Contract, including the identity of the parties to the Contract. As such, Plaintiff must not be allowed to plead an alternate agreement was created by the same documents that evidence negotiation and performance of the Contract. By pleading an alternate agreement existed between itself and TCP, Plaintiff is plainly attempting to ignore the existence of the Contract between itself and Hoop, a debtor in bankruptcy subject to the automatic stay.

Moreover, as a matter of law, courts will look to the unambiguous intent of the parties as embodied in written agreements such as the Contract. Gould v. Lightstone Value Plus Real Estate Inv. Trust, 486 F. Supp. 2d 325, 328 (S.D.N.Y. 2007) (granting the defendant's motion to dismiss after interpreting a valid, enforceable contract between the plaintiff and an entity related to, but distinct from, the defendant). Gould v. Lightstone Value Plus Real Estate Inv. Trust, 486 F. Supp. 2d 325, 329 (S.D.N.Y. 2007) ("If the parties' intent is unambiguously conveyed by the plain meaning of the agreements, then interpretation is a matter of law, and . . . may be resolved by . . . Rule 12(b)(6) dismissal.").

Hoop is a separate and distinct entity from TCP. The Contract clearly indicates that Hoop, not TCP, entered into the Contract with Plaintiff. Pursuant to the Contract, Plaintiff provided the Goods and Services to The Disney Stores. Therefore to the extent that Plaintiff has any rights against any party with respect to the provisions of the Goods and Services, those rights are governed by the Contract. Because Hoop, and not TCP, is the party to the Contract, any and all claims against TCP must be dismissed.

6

B.  **Plaintiff's Quantum Meruit Claim Must be Dismissed Because the Underlying Contract is Valid and Enforceable**

Additionally, because the Contract is enforceable, Plaintiff's attempt to plead a quantum meruit claim must also fail. While quantum meruit claims can be pled in the alternative in connection with a contract, they cannot withstand a motion to dismiss when the underlying contract is valid and enforceable. D'Accord Fin. Servs., Inc. v. Metsa-Serla Oy, 1999 U.S. Dist. LEXIS 1202 (S.D.N.Y. Feb. 5, 1999) (dismissing a quantum meruit claim as insufficient under New York law where an express agreement covered the same subject matter); Bridgeway Corp. v. Citibank, N.A., 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001) ("Generally, quasi-contractual relief, such as unjust enrichment, is not permitted when an express agreement exists that governs the dispute between the parties."); Corcoran v. GATX Corp. & GATX Tech. Servs. Corp., 2008 N.Y. Slip Op. 2241, 1 (N.Y. App. Div. 4th Dep't 2008) ("[U]njust enrichment, is grounded in quasi contract and, where a valid and enforceable contract exists governing a particular subject matter, it precludes recovery in quasi contract for events arising out of the same subject matter.") (internal quotations omitted). Moreover, "A plaintiff is not entitled to employ the legal fiction of quasi-contract to 'substitute one promisor or debtor for another.'" Callano v. Oakwood Park Homes Corp., 219 A.2d 332, 335 (N.J. App. Div. 1966).

Here, there is a valid, enforceable contract between Plaintiff and Hoop governing the subject matter of Plaintiff's quasi-contract claims, the Goods and Services. Therefore, in accordance with the settled law of New York, Plaintiff's quantum merit claims must be dismissed as a matter of law. Likewise, because the Contract is between Plaintiff and Hoop, Plaintiff cannot plead quantum meruit to establish an alternative agreement between Plaintiff and TCP in an attempt to "substitute one promisor or debtor for another." Id.

C. **The Complaint must be Dismissed for Failure to Include Hoop as a Party**

Alternatively, even if the Complaint cannot be dismissed pursuant to Rule 12(b)(6), the Complaint must be dismissed under Rule 19 due to Plaintiff's failure to join Hoop - an indispensable party. Notwithstanding the fact that Plaintiff pleads the existence of an alternate agreement, the subject matter of the Contract is clearly and indisputably at issue. Hoop, not TCP, is a party to the Contract and therefore Hoop is clearly a necessary and indispensable party to this Action.

None of the cases cited by Plaintiff support the contention that Hoop is not a necessary and indispensable party. For instance, Plaintiff cites <u>General Electric Capital Corp. v. PRO-FAC Cooperative, Inc.</u>, 2002 U.S. Dist. LEXIS 10419 (S.D.N.Y. 2002) for the proposition that it seeks to hold TCP liable for TCP's own actions as parent to Hoop, and, therefore, Hoop is not an indispensible party. Plaintiff's reliance is misplaced. First, the <u>PRO-FAC</u> court found that neither defendant sought dismissal of the case under Rule 19. <u>PRO-FAC</u> at *6 n.1 (stating that the indispensability of a non-party was not addressed except to the extent the arguments asserted by the defendants had ramifications on the Court's jurisdiction and remand determinations). Second, the complaint at issue in <u>PRO-FAC</u> included an alter-ego claim against the parent-defendants and the parent-defendants did not dispute that they were potentially liable under the lease. <u>See id</u>. at *5-7. Here, Plaintiff has not alleged an alter-ego claim against TCP.

Plaintiff's reliance upon <u>Aetna Casualty and Surety Co. v. Namrod Development Corp.</u>, 140 B.R. 56 (S.D.N.Y. 1992), is equally misplaced. Plaintiff cites <u>Namrod</u> for the proposition that as the parent of Hoop, TCP has knowledge and possession of the evidence relevant to its own defense, and, therefore, Hoop is not necessary as a party defendant. <u>Namrod</u>, however, is inappoite to the facts of this case. In <u>Namrod</u> both the debtor and non-debtor defendants executed the contract at issue. Moreover, the contract contained an agreement by

8

both defendants to jointly and severally indemnify the plaintiff for any losses. Id at 58. TCP, by contrast, is neither a party to the Contract nor a guarantor of Hoop's obligations under the Contract.

In this case, since Hoop is the only party to the Contract with Plaintiff, it is indisputably a necessary party. Dunn v. Std. Bank London Ltd., 2006 U.S. Dist. LEXIS 3115, *10 (S.D.N.Y. Jan. 30, 2006). In Dunn, the Court was presented with a breach of contract action in which plaintiffs had named two defendants while failing to name the actual contract counter party. Dunn, 2006 U.S. Dist. LEXIS 3115, *2. The court held that the non-party, the actual contractual counterparty, was a necessary and indispensable party and must be joined as a defendant.[4] Id. at *2. The Dunn court reasoned, notwithstanding plaintiffs' allegations that the named defendants were the true contract counter-parties, that "it is difficult to see how plaintiffs' could be accorded complete relief if the sole named party with which they contracted is absent from the action." Id. at *10. Furthermore, the court stated that the unnamed party was indispensable "[b]ecause there is no indication that either of the defendants was actually a party to the contract on which plaintiffs' premise their action, no adequate judgment could be rendered in [the non-party's] absence." Id.; see also Envirotech Corp. v. Bethlehem Steel Corp., 729 F.2d 70, 76 (2d Cir. N.Y. 1984) (holding that the real party in interest to the contracts in dispute was an indispensable party); Nowakowski v. Kohlberg, 1991 U.S. Dist. LEXIS 107, *7 (S.D.N.Y. Jan. 8, 1991) (stating that a party is necessary "because the absent party is the real party in interest").

---

[4] The holding of the Dunn court that the non-named defendant was indispensable was subsequently re-affirmed in response to a reconsideration motion. Dunn v. Std. Bank London, Ltd., 2006 U.S. Dist. LEXIS 54578, *7-*8 (S.D.N.Y. Aug. 8, 2006)(holding that the non-joined party was "an indispensable party under Rule 19" because it employed the plaintiffs, and thus, plaintiffs contractual claims were really against it and not the named defendant).

9

Plaintiff executed a valid contract with Hoop for the very same goods and services it seeks to hold TCP liable for, yet it failed to name Hoop as a defendant. Given the existence of the Contract, which Plaintiff does not dispute, Hoop is a necessary party to this action. Absent Hoop, the parties cannot be accorded complete relief.

Accordingly, Hoop must be joined as an indispensable party for this Action to proceed. If the Plaintiff refuses to seek relief from the automatic stay in the bankruptcy proceeding and name Hoop as a defendant, then the Complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, TCP respectfully submits that the Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(7), and 19 for failure to state a claim upon which relief can be granted and failure to join an indispensable party.

Respectfully submitted,

Dated: August 20, 2008

    /s/ John T. Dorsey
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Robert S. Brady (NY Bar # 733925)
John T. Dorsey (DE No. 2988) (*Admitted Pro Hac Vice*)
Sharon M. Zieg (DE No. 4196) (*Admitted Pro Hac Vice*)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com;
    jdorsey@ycst.com;
    szieg@ycst.com

*Counsel for The Children's Place Retail Stores, Inc.*

DB02:7149428.4    067281.1001

**CERTIFICATE OF SERVICE**:

      I hereby certify that on August 20, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

      Matthew Persanis, Esq.
      ELEFANTE & PERSANIS, LLP
      Scarsdale, New York 10583
      (914) 725-4000

        /s/ John T. Dorsey
      YOUNG CONAWAY STARGATT & TAYLOR, LLP
      Robert S. Brady (NY No. 733925)
      John T. Dorsey (DE No. 2988) (*Admitted Pro Hac Vice*)
      Sharon M. Zieg (DE No. 4196) (*Admitted Pro Hac Vice*)
      The Brandywine Building
      1000 West Street, 17th Floor
      Wilmington, Delaware 19801
      Telephone: (302) 571-6600
      Facsimile: (302) 571-1253
      Email: rbrady@ycst.com
            jdorsey@ycst.com
            szeig@ycst.com

      *Counsel for The Children's Place Retail Stores, Inc.*

# **Exhibit A**

The Contract E-mail

DB02:7153385.1                                                                                                                    067281.1001

**Randall Weis**

| | |
|---|---|
| From: | apriftani@childrensplace.com |
| Sent: | Thursday, November 08, 2007 7:13 PM |
| To: | Randall Weis |
| Subject: | RD Weis - Hoop Product Supplier Agreement |
| Importance: | High |
| Attachments: | RD Weis Companies - Hoop Product Supplier Agreement 110707.doc; Disney Pink & Green Carpet 110707.xls |

Randy,

Attached file contains the Product Supplier Agreement that we would like to put in place with RD Weis Companies. It being understood that there may be multiple Exhibit A (Product Price Schedule) executed pursuant to this agreement and any such new Exhibit will automatically become part of this agreement. Please forward the contract to the appropriate department for authorized signature and let me know if you have any questions.

Thanks,
Andi

3/27/2008

# **Exhibit B**

The Authorization E-mail

DB02:7153385.1                                                                                              067281.1001

**Randall Weis**

| | |
|---|---|
| From: | apriftani@childrensplace.com |
| Sent: | Tuesday, November 13, 2007 1:09 PM |
| To: | Randall Weis |
| Cc: | Joe Pedalino; Rose Salerno; Kevin Kingsland; ksysyn@childrensplace.com; mtoro@childrensplace.com |
| Subject: | Re: Childrens Place/Disney Carpeting |
| Importance: | High |

Randy,

Per our conversation and accordance with the terms and conditions of the contract, please proceed with the order.

Thanks,
Andi

---

"Randall Weis" <rdweis@rdweis.com>

11/12/2007 08:44 AM

To <apriftani@childrensplace.com>
cc "Joe Pedalino" <Joe.Pedalino@Milliken.com>, "Rose Salerno" <rsalerno@rdweis.com>, "Kevin Kingsland" <kkingsland@rdweis.com>
Subject Childrens Place/Disney Carpeting

Andy,

Before the end of the day, we will send you over a master installation price for all of the store remodels that will reflect a fully turn key price that you can give to your GC's.

On the initial order as we discussed, I think it makes sense for now to follow your Exhibit B dates/stores/quantities for our initial order. Given that, we suggest we order now the grout of stores that represent # 1 through 8, which consitute a net yardage of 2,993 and with overage up to 3,292. If we place this order, the carpet cost will be 3,292 x $26.06 or $85,789.52. Since the ultimate destinations are really not known at this time, you could build in a tax estimate which I would say is approximately $6,863.16 and have us reconcile on the back end. If you have another way of reconcilling, let me know. Freight from our warehouse will be separately billed when the goods are released.

If you can get us a PO today, we can get this initial order in. Please forward the PO to Rose Salerno in our Port Chester, NY office at 914 937 9620 (fax) or she can accept an pdf PO as well.

I will be on a plane to Dalton shortly.....I will check back in when I land.

Randy

*Randall D. Weis*
*President, Founder*


3/27/2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

R.D. WEIS & COMPANY, INC., : Index No.
 : **08 CV 4245 (WCC)**
 Plaintiff, : ECF Case
 :
 :
v. :
 :
 :
 :
THE CHILDREN'S PLACE RETAIL :
STORES, INC., :
 :
 :
 :
 Defendant. :
 :

---

## ORDER

AND NOW, this _____ day of _____, 2008, upon consideration of the Motion to Dismiss of Defendant, The Children's Place Retail Stores, Inc., and any responses thereto, it is hereby **ORDERED** and **DECREED** that said Motion is **GRANTED** and the Complaint of Plaintiff, R.D. Weis & Company, Inc., is hereby **DISMISSED** with prejudice.

                                                                         _____
                                                                         The Honorable William C. Conner
                                                                         Sr. United States District Court Judge