UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

08 Civ. 4245 (WCC)

R.D. WEIS & COMPANY, INC.,                    :

                        Plaintiff,      :        **ECF CASE**

          - against -                   :        **OPINION**
                                                 **AND ORDER**

THE CHILDREN'S PLACE RETAIL STORES,     :
INC.,
                        Defendant.      :

- - - - - - - - - - - - - - - - - - - - X


**A P P E A R A N C E S :**


                              ELEFANTE & PERSANIS, LLP
                              **Attorneys for Plaintiff**
                              670 White Plains Road, Suite 321
                              Scarsdale, New York 10583

BARBARA CURTIS, ESQ.

          Of Counsel


                              YOUNG CONWAY STARGATT & TAYLOR, LLP
                              **Attorneys for Defendant**
                              1000 West Street, 17th Floor
                              The Brandywine Building
                              Wilmington, DE  19801

ROBERT S. BRADY , ESQ.
JOHN T. DORSEY, ESQ.
SHARON M. ZIEG, ESQ.

          Of Counsel


                              **Copies E-Mailed to Counsel of Record**

**Conner, Sr. D.J.:**

Plaintiff R.D. Weis & Company Inc. ("R.D. Weis") brings this action against defendant The Children's Place Retail Stores, Inc. ("TCP") to recover damages for breach of contract and breach of quasi-contract under theories of unjust enrichment and *quantum meruit*.  Defendant now moves to dismiss the claims against it pursuant to FED. R. CIV. P. 12(b)(6), 12(b)(7), and 19(a).  For the following reasons, defendant's motion is denied.

**BACKGROUND**

Plaintiff alleges the following in its Complaint.

On approximately November 13, 2007, R.D. Weis entered into an agreement with TCP whereby R.D. Weis would order, store, deliver and install carpet in TCP retail stores operating under the names Disney Stores and/or The Children's Place Retail Stores in various states in exchange for compensation.  (Complt. ¶ 6.)  Delivery and installation were to begin in or about December 2007. (*Id.*)  Under the agreement, R.D. Weis would order carpet and related materials, perform certain work, including labor and installation, and incur shipping and storage fees, in consideration of TCP's payment to R.D. Weis of approximately $616,462.95 plus monthly storage fees of $5,000.00.  (*Id.*) The offers and negotiations, which culminated in an agreement between R.D. Weis and TCP, were made through verbal communications and exchange of written and electronic correspondence and documents.  (*Id.* ¶ 7.)  Pursuant to the agreement, Andy Priftani, Manager, Strategic Planning, The Children's Place, placed an order with R.D. Weis for carpeting and related services.  (*Id.* ¶ 8.)

Between November 2007 and March 2008, R.D. Weis performed all of its duties pursuant to the agreement.  (*Id.* ¶ 9.)  R.D. Weis verified its performance to TCP through written and oral

1

communications and specified all costs in invoices provided to TCP on a good faith and timely basis. (*Id.* ¶ 10.)  On or about December 19, 2007, about the time goods were to be shipped, R.D. Weis provided TCP with a written reminder of the terms and conditions of invoicing and payment.  (*Id.* ¶ 13.)  On the same date, R.D. Weis notified TCP that it was making payments to vendor(s) in reliance on the agreement and that payments would in turn be due from TCP net 45 days.  (*Id.* ¶ 14.)

On February 13, 2008, March 10, 2008, March 11, 2008 and March 20, 2008, R.D. Weis sent all invoices to TCP personnel via e-mail, as instructed by TCP.  (*Id.* ¶ 16.)  The invoices reflected performance completion in nine stores, with amounts totaling $199,587.17 and goods and services ordered for 36 additional stores, with amounts totaling $416,604.78.  (*Id.*)  On March 11, 2008 and March 14, 2008, TCP acknowledged receipt of the invoices and responsibility for its obligations under the agreement and its intention to process outstanding invoices within two weeks.  (*Id.* ¶ 17.)

R.D. Weis sent additional invoices and written requests for payment for completed stores and for orders made in reliance on the agreement on March 20, 2008, March 25, 2008 and March 26, 2008.  (*Id.* ¶ 18.)  TCP continually acknowledged to R.D. Weis that the invoices would be paid.  (*Id.*)  To date, R.D. Weis has received no payment from TCP.  (*Id.*)

Defendant contends that the agreement was not between R.D. Weis and TCP, but rather R.D. Weis and Hoop Retail Stores, LLC ("Hoop"), a subsidiary of TCP that is currently under bankruptcy protection in the United States Bankruptcy Court for the District of Delaware.  (Def. Mem. Supp. Mot. Dismiss at 3.)  In support of the argument that R.D. Weis contracted not with TCP, but with Hoop, defendant offers a copy of a contract between R.D. Weis and Hoop (the "Written Contract"). (*Id.*, Ex. A at 1.)  The parties as described by the Written Contract are R.D. Weis and "Hoop Retail Stores, LLC, a Delaware limited liability company, including its parent and other subsidiaries of its

2

parent." (*Id*.)  The Written Contract as provided by defendant is unexecuted, being signed only by R.D. Weis.  (*Id*. at 11.)  Defendant also points to various invoices that list Hoop as the entity to which goods were sold and TCP as the location to which the goods were shipped.  (*Id*., Ex. D.)

## DISCUSSION

### I.    <u>Legal Standard</u>

A motion brought under Fed. R. Civ. P. 12(b)(6) posits that the plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well-pleaded facts and consider those facts in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.).   In assessing the legal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference.  *See* Fed. R. Civ. P. 10(c); *Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999);  *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996).

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks and citation omitted).  The fact pleading standard is "a flexible 'plausibility standard' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."

*Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d. Cir. 2007) (emphasis in original); *see Ello v. Singh*, 531 F. Supp. 2d 552, 562 (S.D.N.Y. 2007). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which plaintiff complains are insufficient as a matter of law. *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

## II.  <u>Contract Claim</u>

The elements of a breach of contract claim are: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (internal quotation marks and citation omitted). A contract claim may be dismissed where plaintiff fails to set forth specific information as to the date on which the agreement was made, the terms of the agreement, or any evidence supporting the formation of the agreement. *Posner v. Minn. Mining & Mfg. Co.*, 713 F. Supp. 562, 563-64 (E.D.N.Y. 1989).

Defendant argues that plaintiff fails to state a claim for breach of contract because it fails to allege a valid contract between plaintiff and defendant. Defendant asserts that plaintiff "relies on vague, bald allegations to establish a contract," failing to specifically allege the existence of a signed writing by TCP and adds that plaintiff failed to "bring to the Court's attention the only contract that purports to provide for the goods and services for which [plaintiff] seek[s] to recover [, the Written Contract]." (Def. Mem. Supp. Mot. Dismiss at 1, 5.)

The Court disagrees. Plaintiff's Complaint specifically alleges the formation of a contractual relationship between plaintiff and defendant through correspondence including e-mails and documents between R.D. Weis and TCP. On November 7, 2007, an e-mail was sent from

4

aprifatani@childrensplace.com to R.D. Weis which stated, in relevant part, "Welcome to doing business with The Children's Place."  R.D. Weis and TCP sent e-mails and documents back and forth, which the complaint alleges to have included offer, acceptance, consideration, product specifications, and payment terms including an address to which R.D. Weis should send invoices: factinvoices@childrensplace.com.  (Complt. ¶¶ 6-9, 13-18.)

Moreover, contrary to defendant's assertion, plaintiff has not failed to "bring to the Court's attention the only contract that purports to provide for the goods and services for which [plaintiff] seek[s] to recover."  (Def. Mem. Supp. Mot. Dismiss at 1.)  The Complaint itself alleges that R.D. Weis formalized the agreement on November 13, 2007.  (Compl. ¶ 6.)  The date of November 15, 2007 appears below R.D. Weis's President's signature on the Written Contract provided by defendant (Def. Mem. Supp. Mot. Dismiss, Ex. A. at 11); it is, therefore, reasonable to presume that plaintiff's reference in the Complaint was to the same Written Contract to which defendant points.  Additionally, plaintiff includes the same Written Contract as an exhibit to its memorandum.  (Pl. Mem. Opp. Mot. Dismiss, Ex. A (pages not numbered).)

Finally, the Court notes that this unexecuted Written Contract fully supports the proposition that the agreement was between R.D. Weis and TCP.  On November 8, 2007, Priftani sent an e-mail (from aprifatani@childrensplace.com) to R.D. Weis, stating, the "[a]ttached file contains the Product Supplier Agreement [the Written Contract] that we would like to put in place with RD Weis Companies . . . [p]lease forward the contract to the appropriate department for authorized signature." (*Id*. (pages not numbered).)  R.D. Weis did in fact sign and return the Written Contract to TCP. (Def. Mem. Supp. Mot. Dismiss, Ex. A at 11.)  The preamble to that Written Contract, as proposed by TCP, explicitly defines "Hoop" as "Hoop Retail Stores, LLC, a Delaware limited liability

5

company, *including its parent* [TCP] *and other subsidiaries of its parent*."[1]  (Def. Mem. Supp. Mot.

Dismiss, Ex. A at 1 (emphasis added).)  Thus, by the Written Contract's clear definition of Hoop,

each contractual reference to Hoop includes both Hoop and TCP.  Therefore, the contractual

provision that states, "[a]ll accurate and undisputed Valid Invoices that Supplier submits to Hoop

in accordance with the terms of this Agreement shall be paid by Hoop under the terms of this

Agreement," is clearly a provision that binds TCP to pay R.D. Weis.  (*Id.* at 2.)  Moreover, because

the Written Contract was apparently prepared by TCP and clearly sent to R.D. Weis by TCP, to the

extent there are any ambiguities, they will be construed in favor of R.D. Weis.  *Herrera v. Katz*

*Commc'ns Inc.*, 532 F. Supp. 2d 644, 647 (S.D.N.Y. 2008) ("principles of contract interpretation []

provide that an ambiguity in a contract should be construed against its drafter").  It is plain that TCP

is bound by the Written Contract.  The allegations set forth in the Complaint are sufficient to state

a claim for breach of contract against TCP.

   Defendant next argues that plaintiff fails to state a claim because plaintiff does not provide

a writing signed by TCP.  Article 2 of the Uniform Commercial Code ("U.C.C.") mandates that, to

establish a breach of contract in an action based on the sale of goods over $500, the party seeking

to enforce the contract must have a writing signed by the party against whom enforcement is sought.

N.Y. U.C.C. § 2-201 (2001).  However, an exception to the statute of frauds is relevant based on the

---

[1]   Defendant also argues that plaintiff's Complaint suggests that "TCP Services, not
TCP, may have been acting on behalf of Hoop with respect to the Contract between Hoop and
[p]laintiff."  (Def. Mem. Supp. Mot. Dismiss at 6, n.3.)  The Court has found no reference to
TCP Services in the documentation submitted, including e-mails, invoices, and the Written
Contract.  Indeed, the Written Contract is explicit in its definition of Hoop to include its parent.
Defendant states that TCP is the parent of Hoop and that TCP Services is "a separate and distinct
legal entity from TCP."  (*Id.* at 1, 3.)  Thus, the suggestion that TCP Services acted on behalf of
Hoop is not supported by any documents before this Court.

assertions in the Complaint.

The U.C.C. does not require a signed writing where the goods are specifically manufactured for the buyer, not suitable for sale in the ordinary course of the seller's business and the seller has made substantial progress in beginning to manufacture or procure the goods. *See, e.g.*, *Standard Builders Supplies v. Gush*, 206 A.D.2d 720, 721 (3d Dep't 1994), *citing* N.Y. U.C.C. § 2-201(3)(a). The specifications set forth in the e-mails and the unexecuted Written Contract, as well as those referenced in the Complaint, set forth custom specifications and at least raise a question of whether the carpets, when installed as and where directed by the buyer, qualify as specially manufactured goods.[2]

## III.   <u>Quasi-Contract Claim</u>

A plaintiff making a claim based on quasi-contract must allege: (1) the performance of services in good faith; (2) the acceptance of services by the person to whom they are rendered; (3) an expectation of compensation; and (4) the reasonable value of the services rendered. *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 98 (2d Cir. 1994). "A quasi-contractual obligation . . . is one imposed where there has been no agreement by the parties but where one party has been unjustly enriched and in equity and good conscience should compensate another." *Seymore v. Reader's*

---

[2]        The Court notes that even if no exception to the statute of frauds applies, the electronic signatures at the bottom of the e-mails may qualify as signed writings by TCP. Courts have held that a typed signature in an e-mail can qualify as a signed writing. *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289 (7th Cir. 2002); *Bazak Int'l Corp. v. Tarrant Apparel Group*, 378 F. Supp. 2d 377 (S.D.N.Y. 2005); *Rosenfeld v. Zerneck*, 4 Misc. 3d 193, 195-96, 776 N.Y.S.2d 458, 460 (Sup. Ct. Kings Co. 2004) ("the sender's act of typing his name at the bottom of the e-mail manifested his intention to authenticate this transmission for statute of frauds purposes."). Still, the Court need not rule on whether this particular electronic signature satisfies the statute of frauds because the Complaint has raised facts implicating an exception to the statute of frauds.

*Digest Ass'n, Inc.*, 493 F. Supp. 257, 265 (S.D.N.Y. 1980) (Conner, J.).

The existence of an express contract ordinarily precludes *quantum meruit* relief in quasi-contract. *Fashionwear Ltd., v. Regatta LLC*, 2004 WL 2210258, at *3 (S.D.N.Y. Sept. 30, 2004). Here, defendant argues that the Written Contract precludes relief in quasi-contract.  The Court first notes that the Written Contract includes TCP as a party, based on the definition of "Hoop" in the preamble, as discussed in greater detail above.  Still, the Written Contract does not preclude a claim for relief in quasi-contract because, as defendant concedes, the Written Contract is not an executed contract.  (Def. Mem. Supp. Mot. Dismiss at 4.)  Defendant notes that discovery may yield a copy of that contract signed by Hoop.  (*Id*. at n.1.)  It is thus clear that this argument is best preserved until after the completion of discovery, as, at this point, the validity and enforceability of the express Written Contract is in dispute and, therefore, plaintiff has properly pleaded its quasi-contract claim as an alternative ground of relief.

IV.     **Hoop as a Necessary Party**

Defendant argues that if the Court does not dismiss the Complaint for failure to state a claim, the Court should dismiss the action under FED. R. CIV. P. 12(b)(7), for failure to join a necessary party under FED. R. CIV. P. 19.  That rule states, in relevant part,

> [a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

8

FED. R. CIV. P. 19(a)(1).

Defendant contends that Hoop is the only party to the contract with R.D. Weis and is, therefore, a necessary party under Rule 19.  In support of this argument, defendant cites *Dunn v. Standard Bank London Ltd.*, for the proposition that "[i]f the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a) . . . [m]oreover, it is difficult to see how plaintiffs could be accorded complete relief if the sole named party with which they contracted is absent from the action."  2006 U.S. Dist. LEXIS 3115, at *10 (S.D.N.Y. Jan. 30, 2006).

Reliance on *Dunn* is misplaced.  First, the only contract that names Hoop as a party to the agreement is the unexecuted Written Contract.  Further, even if the unexecuted Written Contract is found to govern this claim, the Written Contract defines Hoop to include TCP.  (Def. Mem. Supp. Mot. Dismiss, Ex. A at 1.)  Therefore, Hoop is not the sole contracting party, but rather, at most, one of the contracting parties and "[w]ell established precedent holds that 'one of several joint obligors is not an indispensable party to an action against the others.'"  *Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 2001 WL 585638, at *4 (S.D.N.Y. May 30, 2001), *citing Greenleaf v. Safeway Trails, Inc.*, 140 F.2d 889, 890 (2d Cir. 1944).  Further, where the contracting parties include a parent and a wholly-owned subsidiary, as is the case here, courts in this circuit have found that the subsidiary is not a necessary party.  *See Aetna Cas. & Surety Co. v. Namrod Dev. Corp.*, 140 B.R. 56 (S.D.N.Y. 1992) (debtor is not an indispensable party because defendants, as controlling shareholders, had full knowledge of events and circumstances underlying the litigation).  It is plain to the Court that TCP, like *Aetna*, has full knowledge of the events and circumstances that gave rise to this litigation.  Each e-mail through which the agreement was negotiated came from a TCP e-mail

9

address and TCP is in possession of both the invoices and the unexecuted Written Contract listing it as a party.  As Hoop is a wholly-owned subsidiary of TCP, another contracting party with full knowledge of the contractual events, Hoop is not necessary to this action.

Because this Court finds that Hoop is not a necessary party, the Court need not determine whether its absence renders dismissal proper.

## CONCLUSION

For all of the foregoing reasons, the defendant's motion to dismiss (Doc. #3) is denied.

SO ORDERED.

Dated:  White Plains, New York
        November 19, 2008

                                        _____
                                        Sr. United States District Judge

10